**Opinion issued July 3, 2025.**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-25-00041-CV**

———————————

**MARIA CARMEN YANEZ, Appellant**

**V.**

**THE PINES CONDOMINIUM ASSOCIATION, INC., Appellee**

---

**On Appeal from the 165th District Court**
**Harris County, Texas**
**Trial Court Case No. 2024-70073**

---

**MEMORANDUM OPINION**

This interlocutory appeal concerns a real property dispute between appellant

Maria Carmen Yanez and appellee The Pines Condominium Association, Inc.  After

the Association attempted to remove a fence Yanez alleges encloses her patio, Yanez

sued the Association for trespass to try title and requested declaratory relief removing any cloud on her title and declaring that she has an undivided interest in the strip of land between her property and the fence through her adverse possession. Yanez applied for a temporary injunction prohibiting the Association from "entering, possessing, or altering" her patio. After a hearing, the trial court found Yanez failed to meet her burden of proof and denied her application.

On appeal, Yanez argues the trial court abused its discretion in denying her application because she presented evidence demonstrating that she had likelihood of success on her adverse possession claim and she would suffer irreparable harm if the temporary injunction was not granted. Because Yanez failed to prove that she has a probable right to relief on her claim for trespass to try title by adverse possession, we affirm the trial court's order denying Yanez's application for a temporary injunction.

## Background

In her petition, Yanez alleged that she purchased a unit in The Pines Condominiums, located at 12633 Memorial Drive, Unit 147, Houston, Texas 77024 ("Property") on April 30, 2003.[1] She further alleged:

> At the time it was purchased by Plaintiff, the Property had a patio (the "Patio"), adjoining the backside of the Property, exclusively accessible

---

[1] Yanez, who proceeded pro se in the trial court and filed a pro se brief in this appeal, subsequently retained counsel who filed an appellate brief on her behalf, raising the same appellate issues presented in her pro se brief.

2

by the Property via the back kitchen door, encompassing a space adjacent to the rear of the Property, enclosed by a wooden fence, as shown by that certain survey dated May 7, 2014.

Yanez alleged that she "along with her predecessors in interest have been in unbroken possession and use of the Patio actually, visibly, continuously, hostilely, and exclusively for over 25 years." She alleged that on October 5, 2024, she was informed by a member of the Association's board that "the Patio would be converted into a non-exclusive walkway." Yanez described this as a threat to "enter and dispossess Plaintiff of the Patio." Yanez asserted a claim against the Association for trespass to try title by adverse possession and requested declaratory relief "removing any cloud on Plaintiff's title, determining that Plaintiff has an undivided interest in the Patio through her adverse possession." She also applied for a temporary restraining order prohibiting the Association from "further commandeering, possessing, occupying, or in any way altering the Patio," and a temporary injunction prohibiting the Association from "entering, possessing, or altering the Patio in any way."

After issuing a temporary restraining order, the trial court held a hearing on Yanez's application for a temporary injunction. Yanez, who was proceeding pro se, was the only witness to testify at the hearing.

At the hearing, Yanez testified that the Association was attempting to remove a fence that enclosed part of her patio, and she complained about allegedly abusive

3

conduct directed at her by members of the Association's board. "For 35 years I have lived there and those 35 years have been hell."

> THE COURT: What's been abusive?

> MS. YANEZ: So, this is like -- we wouldn't finish so it started like maybe when I bought the property and the fence, but it goes there the -- here I can -- like the first -- so this is 20 years ago. I asked for them to change the fence and she's showing me some pictures. I asked her to show them to you. And they have the fence like this, the fence to the neighbor's side. And then it changed so that it doesn't touch any other neighbors only through the patio. And there was a man, Jay was his name, and he would bring it down, kicking it. And at the end just trying to keep it up, I put patches, so many patches just to try to make it stand, keep it standing. I have pictures. I have videos, too.

> THE COURT: Okay.

> MS. YANEZ: So, two months later they decided to bring it all down and they did it without any previous notice just because they wanted to vandalize the whole thing. Why didn't she do it before when it was all in pieces and torn down? When the owner sold the property to me, she belonged to the board and she said that that was the property like that and it should stay like that. And she's still alive and you can call her as a witness, and she can testify to what I'm saying. And I bought the property after 30 years and then she comes and she takes the property, she takes the fence. And that is a personal thing, that is abuse. That has happened to me and many more things.

Yanez further stated, "The thing is that I want the fence because I bought the property like that, because I bought the property like that."

4

The Association did not cross-examine Yanez or call any witnesses, and although the Association's attorney showed the trial court photographs of Yanez's patio and fencing, counsel did not introduce the photographs into evidence.

The Association argued that Yanez's condominium, which she purchased in 2004, includes a patio that is twenty feet by thirteen feet. Yanez's patio is separated from her neighbor's enclosed patio by a walkway that the Association uses to maintain and repair the buildings. According to the Association, Yanez is "utilizing the fence of her neighbors['] enclosed patio." The Association argued that it gave notice to all homeowners that it needed to remove the fence to conduct necessary repairs, and they would replace the fence when the repairs were completed. They asked Yanez to remove her belongings from the "common area" and she refused. The Association argued Yanez had not met her burden to prove she was entitled to a temporary injunction and, "As a matter of law, you cannot adversely possess against a co-tenant or co-owner of the property. There is a single exception to that, but it's not applicable, etc."

At the conclusion of the hearing, the trial court denied Yanez's application for a temporary injunction because she failed to meet her burden of proof, and the trial court dissolved the temporary restraining order. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(4) (authorizing interlocutory appeal from order denying temporary injunction).

5

**Temporary Injunction**

On appeal, Yanez argues the trial court abused its direction by denying her application for a temporary injunction because she presented sufficient evidence establishing that she had a likelihood of success on the merits of her claim for trespass to try title by adverse possession and she would suffer irreparable harm if the injunction was not granted.

## A.     Standard of Review and Applicable Law

The purpose of a temporary injunction is to preserve the status quo pending a trial on the merits. *Clark v. Hastings Equity Partners*, LLC, 651 S.W.3d 359, 366 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)). Temporary injunctions are an extraordinary remedy and do not issue as a matter of right. *Clark*, 651 S.W.3d at 366 (citing *Butnaru*, 84 S.W.3d at 204). To obtain a temporary injunction, an applicant is not required to establish that it will prevail upon a final trial on the merits, but it must plead and prove that it (1) has a cause of action against the opposing party, (2) has a probable right to the relief sought, and (3) faces probable, imminent, and irreparable injury if the injunction is not granted.[2] *See Abbott v. Harris Cnty.*, 672 S.W.3d 1, 8

---

[2]     The "probable right to the relief" element is also referred to as a "probable right of recovery" and a "likelihood of success on the merits." *See Frontera Generation Ltd. P'ship v. Mission Pipeline Co.*, 400 S.W.3d 102, 110 (Tex. App.—Corpus Christi–Edinburg 2012, no pet.) (citing *Intercontinental Terminals Co., LLC v.*

6

(Tex. 2023); *Clark*, 651 S.W.3d at 366. The party applying for a temporary injunction has the burden of offering some evidence that establishes a probable right to relief and a probable interim injury. *See Wyly v. Pres. Dallas*, 165 S.W.3d 460, 465 (Tex. App.—Dallas 2005, no pet.). If the applicant does not discharge her burden, she is not entitled to such extraordinary relief. *Id.*

"Whether to grant or deny a temporary injunction is within the trial court's sound discretion." *Butnaru*, 84 S.W.3d at 204; *McGuire-Sobrino v. TX Cannalliance LLC*, No. 05-19-01261-CV, 2020 WL 4581649, at *6 (Tex. App.—Dallas Aug. 10, 2020, no pet.) (mem. op.) ("The trial court has broad discretion in determining whether the pleadings and evidence support a temporary injunction."). Because this is an interlocutory appeal from an order denying injunctive relief, our review is strictly limited to determining whether there has been a clear abuse of discretion by the trial court in denying the temporary injunction. *See Patel v. St. Luke's Sugar Land P'ship, L.L.P.*, 445 S.W.3d 413, 419 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *see also Butnaru*, 84 S.W.3d at 204 ("A reviewing court should reverse an order granting injunctive relief only if the trial court abused that discretion.").

---

*Vopak N. Am., Inc.*, 354 S.W.3d 887, 897 (Tex. App.—Houston [1st Dist.] 2011, no pet.)).

When reviewing a trial court's decision to grant or deny a temporary injunction, we review the evidence submitted to the trial court in the light most favorable to its ruling, drawing all legitimate inferences from the evidence, and deferring to the trial court's resolution of conflicting evidence. *Patel*, 445 S.W.3d at 420. We may not substitute our judgment for that of the trial court unless its decision was so arbitrary that it exceeded the bounds of reasonableness. *See Butnaru*, 84 S.W.3d at 204. Although a factfinder cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted, the factfinder is sole judge of credibility and "may disregard even uncontradicted and unimpeached testimony from disinterested witnesses." *City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005).

## B.    Analysis

Even assuming Yanez presented sufficient evidence to demonstrate that she will suffer a probable, imminent, and irreparable injury if the injunction is not granted, we conclude the trial court did not abuse its discretion by denying Yanez's application for a temporary injunction because Yanez failed to prove that she has a probable right to recovery on her claim for trespass to try title by adverse possession.

To prevail in a trespass to try title action, a plaintiff must (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common

8

source, (3) prove title by limitations, such as adverse possession, or (4) prove title by prior possession coupled with proof that possession was not abandoned. *Seager v. Fry*, 707 S.W.3d 452, 464 (Tex. App.—Eastland 2025, no pet.).

"The doctrine of adverse possession is based on statutes of limitation for the recovery of real property." *Wells v. Johnson*, 443 S.W.3d 479, 488 (Tex. App.—Amarillo 2014, pet. denied) (citing TEX. CIV. PRAC. & REM. CODE §§ 16.021–.037). "[I]n the context of a dispute concerning possession of real property, the rightful owner of the property must institute suit within a specified period of time (three, five, ten or twenty-five years depending on various statutory factors and conditions) or subsequently be barred from recovery." *Id.*

Adverse possession requires "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 69 (Tex. 2011) (quoting TEX. CIV. PRAC. & REM. CODE § 16.021(1)). Thus, to prevail on her claim for trespass to try title by adverse possession, Yanez must establish (1) the actual possession of the disputed property which is the alleged walkway separating her patio from her neighbor's patio; (2) that is adverse and hostile to the claim of the owner of record title; (3) that is open and notorious; (4) that is peaceable; (5) that is exclusive; and (6) that involves continuous cultivation, use, or enjoyment throughout the statutory period, which Yanez contends is twenty-

five years. *See Seager*, 707 S.W.3d at 469; *see also* TEX. CIV. PRAC. & REM. CODE § 16.027 ("A person, regardless of whether the person is or has been under a legal disability, must bring suit not later than 25 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property.").

On appeal, Yanez argues that she has a strong likelihood of success on the merits of her adverse possession claim because she and "her predecessors in title have openly, continuously, exclusively, and hostilely possessed the Patio for over 25 years."

The record reflects that Yanez, the only witness to testify at the temporary injunction hearing, made ambiguous and inconsistent statements regarding when she purchased the Property and how long her predecessors in interest "openly, continuously, exclusively, and hostilely possessed" the disputed strip of land between the Property and the neighbor's fence. At the hearing, Yanez testified that she "want[s] the fence because [she] bought the property like that" and the previous owner told her "the property [was] like that and it should stay like that." She also stated that she had lived at the Property for thirty-five years and she "bought the property after 30 years and then [the Association] comes and [it] takes the property, [it] takes the fence." Yanez claimed that she had been subject to abusive conduct that was allegedly directed at her by members of the Association's board, and when

10

asked when the abusive behavior began, Yanez testified, "So this is like—we wouldn't finish so it started like maybe when I bought the property and the fence, but it goes there the—here I can—like the first—so this is 20 years ago." Notably, in her petition, Yanez averred that she purchased the Property on April 30, 2003, less than twenty-one years before Yanez alleged that she was informed by a member of the Association's board that "the Patio would be converted into a non-exclusive walkway."

At most, Yanez's testimony, which was the only evidence before the trial court, establishes that her patio was partially enclosed by the neighbor's fence when Yanez purchased the Property. There is no evidence, however, establishing how long the Property's previous owner had been using the neighbor's fence to enclose the patio, or the nature of the previous owner's use of the disputed strip of land between the Property and the neighbor's fence. Although Yanez's testimony is uncontradicted, the trial court, as the sole factfinder, could have determined that Yanez's testimony, which was ambiguous and at times inconsistent, was not credible and disregarded the evidence. *See City of Keller*, 168 S.W.3d at 820 (stating factfinder cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted and factfinder is sole judge of credibility and "may disregard even uncontradicted and unimpeached testimony from disinterested

11

witnesses"). Because Yanez failed to present some credible evidence supporting her allegation that she and "her predecessors in title have openly, continuously, exclusively, and hostilely possessed the Patio for over 25 years," the trial court did not abuse its discretion by denying Yanez's application for a temporary injunction. *See Wyly*, 165 S.W.3d at 465 (stating applicant for temporary injunction not entitled to such extraordinary relief unless applicant offers some evidence establishing probable right to recover and probable interim injury); *see also Allied Home Mortg. Cap. Corp. v. Fowler*, No. 14-10-00992-CV, 2011 WL 2367086, at *5 (Tex. App.—Houston [14th Dist.] June 9, 2011, no pet.) (mem. op.) (stating trial court has broad discretion to determine whether applicant met its burden to establish all requirements for temporary injunction).

We overrule Yanez's first and second issues.

## Conclusion

We affirm the trial court's interlocutory order denying Yanez's application for a temporary injunction.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.

12